# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MONTAQUE BUTLER | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-16-2610 |
| STATE OF MARYLAND, *et al.* | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM

Plaintiff Montaque Butler filed this suit on July 18, 2016, alleging improper conditions at the facility at which he was detained. Defendants, Governor Larry Hogan, the State of Maryland, Secretary Stephen Moyer, former Commissioner Wayne Webb, Attorney General of Maryland Brian E. Frosh, and Warden Kathy Landerkin[1] filed a motion to dismiss or for summary judgment in response to the above-entitled civil rights complaint. (ECF 16.) Although plaintiff Montaque Butler was advised of his right to file an opposition response and of the consequences of failing to do so, he has not opposed the motion. (*See* ECF 17.) For the reasons that follow, the unopposed motion shall be granted. The claims as to the unserved defendants, the State Fire Marshal, the Maryland State Public Works and Members, the Maryland State Treasury, BGE Constellation Energy and Exelon, shall be dismissed without requiring service.

### Background

Butler was an inmate at the Baltimore Pre-Release Unit (BPRU) when this complaint was filed.[2] (Compl. at 1, ECF No. 1.) Butler referenced the cases in this court with numbers 16-

---

[1] Although the Office of the Attorney General also represents the defendant Brenda M. Shell, no motion has been filed on her behalf. *See* Notice of Appearance, ECF No. 7; Mot. Dismiss. However, as the mootness and exhaustion requirements also apply to any claims against her, the suit against her will be dismissed as well.

[2] Butler was released from confinement while this case was pending. (*See* ECF 4.)

1985, 16-1986, and 16-1988 as "class actions" in which he requested intervention.[3] (*Id.* at 3.) He incorporates by reference the claims asserted in those cases and avers that he suffered physical injury by virtue of his exposure to "nicotine, asbestos, lead, mold, mildew and other dangerous environmental substances." (*Id.*) Although Butler states this exposure made him sick, he does not describe the illness. (*Id.*)

Under Butler's caption "Count I" he appears to adopt claims asserted by Gomes and Cofield, both of whom are African American inmates, that defendants Hogan, Moyer, and Landerkin knowingly and purposely hired more African American correctional officers than Caucasian officers at all Baltimore city regional correctional institutions. (*Id.* at 4.) This hiring practice, Butler avers, differs from other facilities in the State where the percentage of Caucasian officers is higher. (*Id.* at 4-5.) Butler claims this practice is discriminatory and results in African American inmates being treated more harshly and unfairly in facilities where there are more African American correctional officers, as compared to facilities where there are a higher percentage of Caucasian officers. (*Id.* at 5.) Butler seeks an order requiring defendants to "hire more whites at (all) DPSCS institutions in Baltimore (City) region, immediate[ly], to cure the deficiencies and dysfunctionality that is systematic throughout Baltimore (City), MD just like its City government ran by Blacks." (*Id.* (emphasis and parentheticals in original).) Butler concludes he is "being adversely affected and severely impacted by the reverse racial divide with 'too' many blacks representing too many blacks in staff and inmate ratios" in violation of the

---

[3] None of the cases referenced are class action lawsuits. Civil Action CCB-16-1985 and CCB-16-1986 are 1983 complaints filed by Keenan Cofield and Christian Gomes alleging that Governor Larry Hogan, the State of Maryland, former Commissioner Wayne Webb, Attorney General Brian Frosh, Warden Kathy Landerkin, and Secretary Stephen Moyer purposely hire more African American correctional officers than Caucasian officers, causing him harm. *See* Compl., *Cofield v. State of Maryland, et al.*, No. 16-1985 (D. Md. filed June 9, 2016); Compl., *Gomes v. State of Maryland, et al.*, No. 16-1986 (D. Md. filed June 9, 2016), *dismissed without prejudice* Mar. 7, 2017. An identical complaint was filed by Raymond Bouldin in case No. 16-1988. Cofield's complaint was later amended to include claims similar to those raised by Butler in this complaint. *See* Am. Compl., ECF No. 5, Suppl. ECF No. 7, and Am./Suppl. Compl., ECF No. 8, *Cofield*, No. 16-1985 (D. Md.).

Equal Protection clause as well as other enumerated federal laws. (*Id.* (emphasis and quotation marks in original).)

In "Count II" Butler claims that from July 12, 2012 to the date of his complaint, defendants, with the exception of Governor Hogan, exposed him and other inmates to dangerous conditions and toxic substances due to "inadequate ventilation [in] some DPSCS facilities." (*Id.* at 5-6.) The complaint alleges that non-smoking inmates were exposed to environmental tobacco smoke "and other drug/toxic substances that are smoked daily . . . in living and housing areas in MD prisons." (*Id.* at 6.) The complaint specifically mentions Cofield, Gomes, and Bouldin, as suffering from chronic asthma. (*Id.* at 6-9.) The complaint continues to state that the plaintiff has sought "medical attention for a physical injury, severe headaches, difficulty breathing, eye irritation, dizziness, runny nose, and having to use his inhaler excessively for relief due to excessive exposure to tobacco smoke and other toxis substances smoked by other inmates throughout MD DOC institutions." (*Id.* at 6.) He asserts that defendants have failed to control contraband tobacco products from coming into BPRU and his exposure to second-hand smoke violates "contemporary standards of decency." (*Id.* at 6-9.)

Butler further contends the environment at BPRU and other unspecified correctional facilities is unhealthy, unsafe, and dangerous as there are no working fire detectors, sprinklers or emergency lights; the floor and walls are laden with asbestos; and there is no fire-fighting equipment. (Compl. at 9.) He alleges that the roof at BPRU leaks when it rains; the sinks require fixing; toilets and showers are stopped up; there are insufficient washers and dryers; and the facility has mold and mildew, is overrun by pests and vermin, and has broken windows and exit signs. (*Id.* at 10.) He notes that "[t]he rats have taken over like they have been allowed [without] control in the City of Baltimore." (*Id.*)

Butler also complains there are no welfare packages for indigent inmates, food portions are inadequate in size and are not provided consistent with schedules at other prisons, there are no outside recreation areas for BPRU inmates, officers sleep on their job posts, and there is inadequate housing space for inmates. (*Id.* at 10-11.) He claims defendants have failed or refused to "fix the issues [of] unconstitutional conduct described above for years." (*Id.* at 10.)

He further alleges that defendants "for decades" have refused to correct violations of *Bounds v. Smith*, 430 U.S. 817 (1977). (*Id.* at 11.) He claims that the correctional facilities located in Baltimore City have no law library, notary services, access to the LASI system, "legal supplies," and stamps to mail pleadings to courts. *Id.* Butler[4] claims that he has over 20 pending legal actions in state and other federal courts and he is unable to comply with court orders or prepare legal responses. (*Id.* at 12.)

Defendants state that Butler did not file a complaint under the administrative remedy procedure regarding any of the claims raised in this complaint, but filed one while incarcerated at the Metropolitan Transition Center (MTC) regarding the calculation of his diminution of confinement credits and release date. (Memo. Supp. Mot. Dismiss, 3, ECF No. 16-1.) Butler was released from custody on July 27, 2016. (*Id.*)

Defendant Landerkin denies hindering or preventing Butler's legal research, court filings, or access to the grievance procedure. (Landerkin Decl. ¶ 3, ECF No. 16-3.) She further denies knowingly permitting the existence of dangerous environmental conditions and states that she has complied with the Maryland Commission of Correctional Standards and accompanying audits. (Landerkin Decl. ¶ 4-6.)

---

[4] The complaint is a copy of the one filed by Keenan Cofield and does not reference a particular plaintiff with regard to pending litigation. (*Compare* Compl. at 12 *with* Compl. at 11, *Cofield*, No. 16-1985 (D. Md.).)

## Standard of Review

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is

genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

**Analysis**

Defendants assert that Butler's complaint should be dismissed as moot because he has been released from prison. (Memo. Supp. Mot. Dismiss at 4.) A case becomes moot when the issues presented are "no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979)). For a declaratory judgment to issue, there must be a dispute which "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 242, (1937). Where injunctive or declaratory relief is requested in an inmate's complaint, it is possible for events occurring subsequent to the filing of the complaint to render the matter moot.

6

*See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Rd's Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief). To the extent the complaint seeks declaratory and injunctive relief, those claims are moot and will be dismissed.

Defendants also assert that Butler did not exhaust administrative remedies prior to filing this complaint, making it subject to dismissal pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.

The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528-29 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to

exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Custis v. Davis*, 851 F.3d 358, 362-63 (4th Cir. 2017).

Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 136 S.Ct. 1850, 1856-57 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")). Where, as here, there is a clear failure to even attempt to exhaust administrative remedies, nor an excuse offered for failing to do so, the complaint insofar as it seeks monetary damages must be dismissed without prejudice.

Butler also names as defendants the State Fire Marshal, Maryland State Public Works and Members, Maryland State Treasury, BGE Constellation Energy and Exelon. Compl. at 1. Under the provisions of 28 U.S.C. § 1915(e)(2) a case proceeding in forma pauperis shall be dismissed at any time "if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Id.* (citing *Florida Dept. of Health v. Florida Nursing Home Assn.*, 450 U.S. 147

(1981) (*per curiam*)). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't §§ 12-104(a)(1) and 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 99 (emphasis in original). Thus Butler's complaint against the State of Maryland, the State Fire Marshal, the Maryland State Public Works and Members, and the Maryland State Treasury is barred by the Eleventh Amendment.

The claim as to BGE Constellation Energy and Exelon is also subject to dismissal because BGE is not a "person" as described in 42 U.S.C. §1983.[5] It is a private actor. In order to state a constitutional claim, the defendant must be a state actor. In limited circumstances, however, seemingly private conduct can be the subject of a §1983 suit. "[W]e have recognized four exclusive circumstances under which a private party can be deemed to be a state actor: (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen." *DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999) (citing *Andrews v. Fed. Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir.

---

[5] "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . ." 42 U.S.C. §1983 (emphasis supplied).

1993)). Because the complaint fails to state *any* misconduct attributable to BGE, it fails to state a claim and must be dismissed.

A separate order follows.

__6/26/18__
Date

__CCB__
Catherine C. Blake
United States District Judge